**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| MORENO SALINAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00159-AGF |
| | ) | |
| STEPHEN V. CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of self-represented plaintiff Moreno Salinas for leave to commence this action without prepayment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $23.58. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will order the Clerk of Court to issue process on all defendants in their individual capacities.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $117.92. Plaintiff has insufficient funds to pay the entire filing fee.  Accordingly, the Court will assess an initial partial filing fee of $23.58, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

## The Complaint

Plaintiff is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri.  He brings this civil rights action under 42 U.S.C. § 1983 alleging defendants used excessive force against him on January 28, 2021 while he was incarcerated at the Southeast

Correctional Center ("SECC"). Plaintiff names as defendants the following correctional officers at SECC: Stephan V. Clark; Meredith Unknown; Unknown Rangale; Unknown Hanson; Unknown Clubbs; Unknown Lemons; Unknown Wilson; Unknown Womach; Unknown Walls; and John Does 1-5. Plaintiff brings all claims against defendants in their official and individual capacities.

Plaintiff states that on January 28, 2021, he was physically assaulted by twelve certified emergency response team ("CERT") members while a case manager and a functional unit manager stood by watching, failing to intervene. Plaintiff does not allege any facts regarding the alleged incident prior to the CERT's response. He states that defendant Walls approached him in a violent and aggressive manner stating, "Submit to the restraints or we will beat your mixed breed ass and take you to one house to finish you OFF."  Seeing the hostile stance the defendants took, plaintiff attempted to comply with the instructions given but was immediately beaten and assaulted by twelve CERT members.

Plaintiff states the defendants slammed him to the floor and handcuffed him. Once the plaintiff was fully restrained, defendants Clark and Walls began to strike him with closed fists and knee him repeatedly in the face and ribs. Plaintiff was then lifted and dragged through the wing toward the rotunda in a semi-conscious state by many defendants. One of the John Doe defendants twisted plaintiff's left ankle until it snapped and broke. Plaintiff was then dropped on the ground and the defendants Wilson and Clubbs struck him in the face and hit him with their knees and elbows. While being dragged through the rotunda defendant Womach and another unknown John Doe defendant intentionally hit plaintiff's head on the door frame.

While plaintiff was in the rotunda, defendants Rangale and Meredith stood in the bubble window and failed to intervene. The other defendants lifted plaintiff off the rotunda floor and dragged him outside to one house. Once the plaintiff was outside, defendants purposefully dropped him on the ground. While on the ground, Womach lifted plaintiff's head off the ground by his hair

and scraped the left side of his face onto the concrete until the tissue on his face began coming off and then turned his head over and began scraping the right side of his face onto the concrete until it bled. After defendant Womach scraped plaintiff's face on the concrete, defendants Hanson and Lemons laid across the plaintiff's back striking him in the ribs with their knees and punching him in the face. Next, they dragged him across the small yard over concrete. Plaintiff was unable to walk because of his injuries. Defendants then dropped plaintiff in the small yard and defendants Stephen Clark and four John Doe defendants started kneeing him in the face and ribs. Then plaintiff was lifted off the concrete floor and dragged semi-conscious to housing unit one.

When he entered housing unit one, defendants Womach and Hanson slammed plaintiff's head face first into the wall, splitting his forehead open and causing him to lose consciousness. Plaintiff states he was then dragged up the stairs of housing unit one and taken to a corner cell and thrown on the bed. Plaintiff states he was then "physically and mentally assaulted" by the CERT officers until the medical staff came to assess him.

Once medical staff arrived, plaintiff was rushed to the hospital by ambulance. The EMTs directed the driver to go to a closer hospital than the one originally dispatched because they did not think plaintiff would survive the beating. Plaintiff spent a week in the hospital before being released. Plaintiff was transferred to Potosi Correctional Center, although the timing of the transfer is unclear.

As a result of the beatings, plaintiff states that he suffered a torn clavicle, three broken ribs, a broken left fibula, and a broken ankle. He also suffered permanent nerve damage in both wrists. He suffered open wounds on his face and received twenty-seven staples in his forehead and left eyebrow. He also suffered multiple cuts and scrapes on the face and body with heavy bruising and abrasions. For relief, plaintiff seeks reimbursement of his medical bills and punitive damages of $25,000 from each defendant.

**Discussion**

*Excessive Force—Defendants Clark, Hanson, Clubbs, Lemons, Wilson, Womach, and Walls*

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment"). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The Court finds on initial review that plaintiff has stated a plausible claim that defendants Clark, Hanson, Clubbs, Lemons, Wilson, Womach, and Walls used excessive force in violation of the Eighth Amendment. The Court will issue process on these defendants in their individual capacities.[1]

*Failure to Protect—Defendants Rangale and Meredith*

---

[1] In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In order to prevail on an official capacity claim, plaintiff would have to establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Plaintiff has not alleged such governmental liability, and therefore his official capacity claims against the defendants will be dismissed.

In addition to protecting inmates from the unnecessary and wanton infliction of pain, the Eighth Amendment imposes upon prison officials the obligation to restore control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). Under § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer…was using excessive force and otherwise was unlawfully punishing the prisoner"); *Buckner*, 983 F.2d at 121-22 (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer). "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

In his complaint, plaintiff states defendants Rangale and Meredith watched the other correctional officers abuse him and did nothing to respond. Liberally construed, plaintiff's complaint states a plausible claim against defendants Rangale and Meredith for failing to intervene in the use of excessive force. The Court will order the Clerk of Court to issue process on defendants Rangale and Meredith in their individual capacities.

*The Doe Defendants*

Plaintiff also makes specific allegations against five unknown defendants, John Doe Nos. 1 through 5.  In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). However, dismissal is only proper "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). An action may proceed against an unknown party as long as the complaint makes "allegations specific enough to permit the

identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg*, 56 F.3d at 37.

Here, plaintiff makes specific allegations against John Doe Nos. 1-5. He states one of the John Does twisted plaintiff's left ankle until it broke. A John Doe helped drag plaintiff through the rotunda and purposefully smacked his head on the door frame. And four John Doe defendants kneed plaintiff in the face and rib cage after he was dragged through gate number 11. It is likely that defendant John Doe Nos. 1-5 will be identified during discovery. The Court will allow these unknown defendants to remain parties to this action.

After Rule 26 disclosures, the Court may grant plaintiff leave to file an amended complaint to specifically name these defendants. The deadline for filing an amended complaint to name these unknown defendants will be addressed in the Court's case management order.

## Motion to Appoint Counsel

Finally, plaintiff has filed a motion to appoint counsel. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court may entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees or costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $23.58 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office as to defendants Stephan V. Clark, Meredith Unknown, Unknown Rangale, Unknown Hanson, Unknown Clubbs, Unknown Lemons, Unknown Wilson, Unknown Womach, and Unknown Walls in their individual capacities.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against all defendants in their official capacities are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED** without prejudice. [ECF No. 4]

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 3rd day of March, 2023.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE