IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MORENO SALINAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No: 1:22-cv-00159-AGF |
| vs. ) | |
| ) | |
| STEPHAN V. CLARK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF MORENO SALINAS' TRIAL BRIEF**

COMES NOW Plaintiff Moreno Salinas ("Mr. Salinas" or "Plaintiff"), by and through his undersigned counsel, and pursuant to this Court's Case Management Order (Doc. 70), hereby submits the following Trial Brief stating the legal and factual issues and authorities relied on and discussing any anticipated substantive or procedural problem:

**INTRODUCTION**

Plaintiff Moreno Salinas filed this lawsuit pursuant to 42 U.S.C. § 1983 against defendants Stephan Clark, Darcie Bolin, Johnny Clubbs, Cole Hansens, Vanissia Lemons, Brandi Merideth, Jerry Walls, Darrel Wilson, Tyler Womack, James Harmon, Bruce Hanebrink, Steven Smith, David Houtz, George Durrow, Matthew Short, and Aaron Raines (collectively "Defendants") for either using excessive force against him or failing to intervene and protect him from the excessive use of force by other officers in an incident on January 28, 2021.

These violations of Mr. Salinas' Eighth Amendment rights resulted in severe and lasting injuries and damages, including but not limited to, an ankle fracture requiring surgery to put in metal hardware, multiple rib fractures, a clavicle fracture, two lacerations on his head requiring staples, a pulmonary contusion, rhabdomyolysis, multiple scrapes and bruises, loss of complete

consciousness, lasting pain and suffering, and lasting mental and emotional damage. The malicious and sadistic force applied was well beyond what was required to gain and maintain control of Mr. Salinas.

After the incident, the Warden found that "the actions taken were NOT warranted to control the actions of the offender." (emphasis in original). Following the Warden's finding, the Use of Force committee concluded that the incident should be further reviewed "due to the use of force not being warranted/appropriate to control the actions of the offender." Next, the Final Review Committee could not ascertain staff misconduct but concluded "due to the extent of the Offender's injuries, this use of force will be referred for investigation through the Office of Professional Standards Employee Conduct Unit." Earl Dye, who worked as an investigative manager for the Office of Professional Standards at the time of this incident, confirmed in his deposition that not opening an investigation into an incident of force could be consistent with agreeing with the findings of the warden.

Following the incident, Defendants, or the facility whereby responsibility is imputed to Defendants, failed to properly follow the procedure required by Southeast Correctional Center to preserve the institutional video evidence of the incident of force on January 28, 2021 depicting 30 minutes before, 30 minutes after, and from 3:06:43 to 3:07:27 of the incident. The Southeast Correctional Center policy states, "the contents of the incident video will be retrieved from the digital monitoring equipment and copied onto a blank CD/DVD. Contents will be copied 30 minutes prior to the incident until 30 minutes after the incident to ensure all portions of the use of force are captured." Defendants failed to preserve this video and spoliated evidence and Plaintiff is entitled to an adverse inference instruction as a result.

2

Additionally, Defendants failed to properly follow the procedure required by Southeast Correctional Center to capture the incident with audio-visual equipment. Pursuant to the Southeast Correctional Center policy, "if time and circumstances allow, each use of force incident should be recorded in accordance with departmental procedures regarding security camera operations. The visual recording operator will record the activities continuously with no pause until the offender is seen by medical staff […] breaks in camera footage must be documented and justified in the use of force report." Defendants, through their failure to capture the incident, spoliated evidence and Plaintiff is entitled to an adverse inference instruction as a result.

## FACTUAL BACKGROUND

On January 28, 2021, Mr. Salinas was incarcerated at Southeast Correctional Center ("SECC").[1] On this date, Defendants were employed by SECC. On January 28, 2021, SECC was on lockdown and CERT[2] was activated at the facility. As a result, inmates in the non-segregation housing unit were not permitted to be outside of their cells. Mr. Salinas, after noon mainline, asked a corrections officer for permission to take a shower and was granted permission. While Mr. Salinas was in the shower, Stephan Clark instructed him to go back to his cell. Mr. Salinas went back to his cell and sometime thereafter, Stephan Clark and an unspecified number of corrections officers,[3] were deployed to transfer Mr. Salinas from his cell in Housing Unit 3, C Wing to the Administrative Segregation Unit in Housing Unit 1. The group of officers approached Mr. Salinas while he was in his cell and instructed him to exit his cell. Jerry Walls told Mr. Salinas to "submit

---

[1] Mr. Salinas sets forth these facts for purposes of this Trial Brief only and does not intend to be bound thereby or to waive any objections to the facts included or excluded herein.
[2] CERT refers to the certified emergency response team.
[3] The institutional video does not clearly make out which officers were present. Defendants' depositions and Reports of Incidents give conflicting accounts of which corrections officers were present. The Defendants did not use a portable recording device as required by the SECC policies. Mr. Salinas is not able to recall which corrections officers were at his cell at the beginning of this incident due to the trauma he sustained.

3

to restraints or we will beat your mixed breed ass and take you to one house to finish you off." (Doc. 76, ¶ 7.)

Mr. Salinas, upon being approached by a large group of corrections officers and CERT members and fearful of his safety, took a swing at Stephan Clark. Immediately thereafter, Mr. Salinas was pepper sprayed multiple times, taken to the ground by multiple officers, put into restraints, and beaten and assaulted by the corrections officers. Mr. Salinas was under control at the time he was on the ground and in mechanical wrist restraints in the C Wing of Housing Unit 3. Despite the fact that Mr. Salinas was under control, Defendants, under the guise of trying to "gain and maintain control" of Mr. Salinas, beat and assaulted him in the C Wing of Housing Unit 3, on the transport to Housing Unit 1, and in two separate cells in the A wing of Housing Unit 1. This violent use of force included, but was not limited to, slamming Mr. Salinas' head into doorways, dragging Mr. Salinas to the ground, dragging his face across the concrete while he was on the ground, and kneeing, elbowing, yanking, and otherwise using physical force on Mr. Salinas through the transport while he could not breathe, see, or walk properly due to his injuries. This violent altercation by the Defendants, over the course of 30 minutes, resulted in extensive injuries to Plaintiff including an ankle fracture requiring surgery to put in metal hardware, multiple rib fractures, a clavicle fracture, two lacerations on his head requiring staples, loss of consciousness, a pulmonary contusion, rhabdomyolysis, and multiple severe scrapes and bruises.

After the incident, the Warden found that "the actions taken were NOT warranted to control the actions of the offender." (emphasis in original). Following the Warden's finding, the Use of Force committee concluded that the incident should be further reviewed "due to the use of force not being warranted/appropriate to control the actions of the offender." Next, the Final Review Committee could not ascertain staff misconduct but concluded "due to the extent of the Offender's

injuries, this use of force will be referred for investigation through the Office of Professional Standards Employee Conduct Unit." Earl Dye, who worked as an investigative manager for the Office of Professional Standards at the time of this incident confirmed in his deposition that not opening an investigation into an incident of force could be consistent with agreeing with the findings of the warden.

The Use of Force Policy at SECC is clear, for incidents of planned uses of force, when possible a portable visual recording device must be used and institutional video must be collected before, during and after any incident of force. Despite the Use of Force Policy in place at SECC, this planned use of force by Defendants was not recorded on a portable visual device with sound; Defendants did not abide by the SECC Use of Force Policy and preserve, the 30 minutes before and 30 minutes after, the use of force incident; there is an unexplained gap in the institutional videos Defendants did produce from 3:06:43 to 3:07:27; and, Plaintiff was taken to an cell in the facility where institutional video is not available before being seen by a medical professional in a different cell.

Despite the Use of Force Policy and Mr. Salinas' Eighth Amendment rights Defendants used excessive force maliciously and sadistically against Mr. Salinas and/or failed to intervene on the excessive use of force being employed, resulting in lasting and severe injuries to Plaintiff. Further, Defendants spoliated evidence and have thereby prejudiced Mr. Salinas in this matter.

## ARGUMENT

I. **Defendants Violated Mr. Salinas' Eighth Amendment Rights by Using Excessive Force Against Him.**

During the altercation on January 28, 2021, Mr. Salinas was under control as soon as he was on the ground in mechanical restraints. He did not continue to resist and all actions of physical force against him after that point were excessive and unlawful.

In an excessive use of force case, the constitutional standard varies depending on whether the victim is a pretrial detainee or convicted inmate of a penal institution. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). "Once an individual is incarcerated, 'only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. What constitutes the unnecessary and wanton infliction of pain varies based on the alleged constitutional violation.'" *See Evans v. Smith*, 24-1882, 2025 WL 2425188, at *4 (8th Cir. Aug. 22, 2025) (citing *Stewart v. Precythe*, 91 F.4th 944, 949 (8th Cir. 2024)). When a claim of excessive force alleging a violation of the Eighth Amendment is made, the core inquiry is whether the force was applied in a good-faith effort to maintain and restore discipline, or maliciously or sadistically to cause harm. *See Edwards v. Byrd,* 750 F.3d 728, 732 (8th Cir. 2014); *Fisherman v. Launderville*, 100 F.4th 978, 980 (8th Cir. 2024). To distinguish between force permitted and force not permitted, courts "consider multiple factors, including the "objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officer, any efforts by the officer to temper the severity of his forceful response, and the extent of the inmate's injury." *Fisherman*, 100 F.4th at 980 (citing *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006)).

The evidence Mr. Salinas presents at trial will prove that Defendants applied force maliciously or sadistically in the incident of force on January 28, 2021. Under the above-stated factors, Mr. Salinas will demonstrate there was no objective need for force once he was in mechanical restraints, had been sprayed with pepper spray multiple times, and was physically

6

restrained by multiple corrections officers. Evidence presented at trial will demonstrate there was no additional perceived threat of Mr. Salinas and there were no efforts to temper the severity of the force used by the Defendants. Further, Mr. Salinas sustained severe and lasting injuries sustained over an extended period of time, and that were caused by a level of force not warranted upon review by superiors. It is anticipated that Defendants will attempt to argue that the use of force was applied in a good-faith effort to maintain discipline over Mr. Salinas; however, the video evidence, the Warden's findings, the Reports of Incidents, and inconsistent deposition testimony do not support this.

Further, it is anticipated that Defendants may argue they each are entitled to qualified immunity. In an excessive use of force case, Plaintiff must also show that every reasonable official in the Defendants' positions would have understood that the action violated the rights of the inmate. *See Fisherman v. Launderville,* 100 F.4th 978, 981 (8th Cir. 2024) (explaining that a plaintiff needed to show every reasonable official in the defendant's position would have understood that kneeing a restrained inmate several times in the face and body violated his rights). "The law has been settled for at least three decades that repeatedly striking a fully restrained inmate violates the Eighth Amendment […] prison officials reasonably should have understood that they were violating a prisoner's Eighth Amendment rights if they beat him while he was bound." *Id* (collecting cases). In this instance, Mr. Salinas was restrained by mechanical wrist restraints,[4] had been sprayed by pepper spray, and was physically restrained by multiple corrections officers. Despite being completely restrained, officers took Mr. Salinas to the ground with multiple corrections officers at least three separate times out of view of the cameras, struck him with various body parts while he was on the ground out of the view of the cameras, yanked his upper body with

---

[4] There are differing accounts of whether Mr. Salinas was in mechanical leg restraints. Some corrections officers' depositions and Reports of Incidents state he was and others do not.

7

such force he could not walk upright, and slammed his head into door frames. It is unquestionable a reasonable official in the positions of the Defendants would have understood the action violated Mr. Salinas' right and that there is extensive case law precedent about this exact fact pattern.

**II.     Defendants Violated Mr. Salinas' Eighth Amendment Rights by Failing to Protect and Intervene on the Excessive Use of Force Used Against Him.**

In a failure to protect case, the plaintiff must prove two parts. *See Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007). "First, the conditions that result from the failure to protect the inmate must pose a substantial risk of serious harm to the inmates;" and, "[s]econd, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Id.*; *see also Perry v. Martin*, 4:10CV2436 SNLJ, 2013 WL 6331474, at *4 (E.D. Mo. Dec. 5, 2013). "A law enforcement officer who knows another officer is using excessive force has a duty to intervene." *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012)(citing *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)); *Gilmore v. Gaden*, 4:24-CV-1347 JSD, 2024 WL 4707847, at *4 (E.D. Mo. Nov. 7, 2024); *Bradford v. Hayward,* 4:24-CV-01293 JMB, 2025 WL 1884434, at *7 (E.D. Mo. July 8, 2025); *Ross v. Teabo*, 4:20-CV-00447-SEP, 2020 WL 5038725, at *5 (E.D. Mo. Aug. 26, 2020)(explaining a correctional officer can be held liable under the Eighth Amendment for failing to intervene in another officer's constitutional violation).

Plaintiff will demonstrate that the corrections officers present during this incident of force on January 28, 2021 in Housing Unit 3, throughout the transport, and in Housing Unit 1 witnessed the other corrections officers committed a constitutional violation and failed to intervene. Further, Plaintiff will show that the conditions of this incident of force posed a substantial risk of serious harm to him and that the other corrections officers were deliberately indifferent to this risk of harm.

8

As a result, Mr. Salinas suffered an ankle fracture requiring surgery to put in metal hardware, multiple rib fractures, a clavicle fracture, two lacerations on his head, loss of consciousness, a pulmonary contusion, rhabdomyolysis, and multiple severe bruises resulting from the extended excessive use of force by the Defendants. Further, the Warden found that the use of force was not warranted and this finding was never disagreed with or proved otherwise.

**III.     Defendants failed to preserve and spoliated video evidence of the Use of Force Incident and an Adverse Inference is Appropriate.**

The district court has the discretion to fashion appropriate sanctions when evidence is destroyed by a party. *See Taylor v. Null,* 4:17-CV-0231-SPM, 2019 WL 4673426, at *4 (E.D. Mo. Sept. 25, 2019). "Among many different sanctions, the court may give a jury instruction on the 'spoliation inference,' which permits the jury to assume the destroyed evidence would have been unfavorable to the position of the offending party." *Id*. To warrant an adverse inference instruction, "(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Id.; see also Stevenson v. Union Pac. R. Co.,* 354 F.3d 739, 748 (8th Cir. 2004).

The *Taylor* case is instructive in this case. In that case, the court imputed responsibility for spoliation of security video footage from a correctional center despite the fact that the individual defendants were not in possession or control of the footage. *See generally Taylor,* 4:17-CV-0231-SPM, 2019 WL 4673426. The court held that that an adverse inference was appropriate in a case where the prisoner was involved in an incident of excessive use of force and requested the institutional video footage. The court found that where the responsibility could be imputed on to the individual defendants, that litigation was foreseeable, finding the intent element met where there was a strong inference of an intent to destroy it for purposes of suppressing evidence, and

9

that the loss of the only existing contemporaneous recording of the events in question prejudices the Plaintiff. *Id.*

In this case, the SECC Use of Force Policy dictates that when there is a planned use of force, a portable device should be retrieved and used to record the incident of force. No such device was used. As a result, there is very limited video footage of the incident at issue in this lawsuit. It is anticipated that Defendants will argue this incident was a spontaneous use of force and not a planned use of force; however, the evidence will demonstrate this was a planned use of force and Defendants failed to abide by the Use of Force Policy.

Further, the SECC Use of Force Policy dictates that in a use of force where video footage is being gathered or collected, the 30 minutes before and after the incident of force should also be collected. In this instance, there was no such video collected and as a result Plaintiff is prejudiced. Plaintiff has no contemporaneous evidence of the incident, or the events leading up to the use of force incident or after. Finally, there is a gap in the institutional video footage that Defendants produced in discovery that has not been explained or supplemented. Therefore, Plaintiff expects to prove he is entitled to an adverse inference regarding the missing video footage.

## **CONCLUSION**

Defendants violated Plaintiff's Eighth Amendment rights. Defendants collectively and individually either used excessive force on Mr. Salinas over the course of approximately 30 minutes and/or failed to intervene while the other Defendants used excessive force on Mr. Salinas. The evidence at trial will prove Defendants' excessive use of force violated Plaintiff's right to be free from unnecessary and wanton infliction of pain constituting cruel and unusual punishment as an inmate. The evidence will further show that Defendants' actions were maliciously and sadistically applied, such that he is entitled to an award of punitive damages.

Dated: September 24, 2025

Respectfully submitted,

UB GREENSFELDER LLP

By: /s/ Kevin F. Hormuth
Kevin F. Hormuth, No. 48165
Natalie K. Schmid, No. 75753
khormuth@ubglaw.com
nschmid@ubglaw.com
10 South Broadway, Suite 2000
St. Louis, MO 63102
Telephone: 314-241-9090
Facsimile: 314-241-8624
*Attorney for Plaintiff Moreno Salinas*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served by electronic mail on September 24, 2025, on all counsel of record.

/s/ Kevin F. Hormuth

Dated: September 24, 2025

Respectfully submitted,

UB GREENSFELDER LLP

By: /s/ Kevin F. Hormuth
Kevin F. Hormuth, No. 48165
Natalie K. Schmid, No. 75753
khormuth@ubglaw.com
nschmid@ubglaw.com
10 South Broadway, Suite 2000
St. Louis, MO 63102
Telephone: 314-241-9090
Facsimile: 314-241-8624
*Attorney for Plaintiff Moreno Salinas*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served by electronic mail on September 24, 2025, on all counsel of record.

/s/ Kevin F. Hormuth